Our second case this morning is No. 23-1354, Honeywell International Inc. v. 3G Licensing. Mr. Halverson. Good morning, Your Honors. Eric Halverson from K&L Gates on behalf of Appendix. This case is the Matrix Map case. The 718 patent represents almost the smallest possible increment above petitioner's primary reference, Phillips 46, which can be found in Appendix 1423. Now, not all increments or differences, however, are patentable differences, as we know from Granby, Jr. Now, there can be no denying that the 718 patent admits that the mathematical algorithm it claims and the challenge claims is a known algorithm, Appendix 56. There can be no denying that of the hundred entries in the basis sequence, the matrix that they issue. Ninety-eight of those entries are identical between the claimed matrix and the prior art matrix, with the last two digits simply being switched, the 1 and the 0 exchanging places. Now, Phillips 46, petitioner's primary reference, expressly tells a person of ordinary skill in the art to protect the most significant bit of the CQI data. This person of ordinary skill in the art understood that the placement of a 1 in the last digit of that matrix provides more representation to that most significant bit. Conversely, a placement of the 1 in the second to last entry of that matrix provides more representation or protection to the next most significant bit. And it is from this baseline of Phillips that we analyze the prior art. Now, what lens do we look at the prior art through? I'm just curious, before you go further, is there any dispute between the parties that when you add the four rows at the bottom to extend out the 16-5 matrix code to the 25 matrix, when you put, when you zero out the entire row except for adding a 1 associated with the final M-I-4, what you're doing there is you're protecting the most significant bit. And likewise, when you have the 1 associated with M-I-3 and zero out all the others in the sequence of that row, what you are doing is providing protection and redundancy for the second most significant bit. Is that disputed between the parties? I don't believe that's disputed here, no. I won't speak for colleagues. The problem here seems to be that there are two possible motivations in switching the positions. One is to improve the throughput, and the other one is to improve the protection for the most significant bit. And the commission or the board said that the, it wasn't known whether the switching of these positions would have an improved throughput or not. And I guess it seems to me that you're not really disputing that in terms of the motivation, that there were questions about whether that would have a beneficial effect on throughput. But your argument seems to be that it was known that it would have a beneficial effect on protecting the most significant bit. Is that a fair statement of what's going on here? Almost, Your Honor. So the 718 patent in the background describes how those of skill and the art at the time were interested in maximizing throughput. So I don't know that I would agree with the statement that throughput is an unknown or throughput was not part of what was driving decisions at the time. But the petition focused solely on protection of the most significant bit, as it's described in the Phillips reference. Yeah, and under KSR, the motivation that's offered for the combination doesn't have to be the same one that motivated the inventors. Exactly right, Your Honor. And what does the record show here about whether switching these positions would improve protection for the most significant bit? There's no dispute in the record, Your Honor, that switching the positions would indeed provide more protection for the most significant bit. So petitioner's expert, Dr. Clark, went through and did all of the math for the different matrices that were at issue and showed how exactly it is that the most significant bit appears in that resulting 20-bit code word and how that would be different if instead you used simply the Phillips proposal. So he explained how the Phillips text suggests to a person of ordinary skill what change to make to that matrix, and then he showed what that change would actually do to that resulting code word. But the board seems to be saying that's not enough, that you'd have to show that it would have an overall benefit on throughput. Am I misreading what the board said? That's our understanding of what the board said, and we believe that's an incorrect application of KSR, Your Honor. Before you get into that, can you just define for me what is throughput? Do you mean like data rate? Like the most maximum data rate you can get under the circumstances? Is that throughput? That's correct. It's the amount of information you can push through per unit time. All right. Can I ask you a quick housekeeping question? There are a number of additional claims that don't seem to be addressed in your briefing separately from other claims, and those are Claims 6 and Dependent Claims 7 and 9 through 13, where I believe there was a different grounds that was being relied on. Are you abandoning those claims? You don't seem to be making arguments with respect to those claims. So we're not abandoning them, Your Honor, but the focus of the appeal is on the analysis of the Phillips reference that the board incorrectly did. And so based on how the final written decision treated the second reference, we managed to address how the interplay between that Nokia reference and the Phillips reference should have been analyzed would be proper, Your Honor. So you're seeking a reversal on some claims and a begin remand on other claims? That would be an acceptable outcome, Your Honor. Weren't there different reasons for motivation to combine in that other alternative? You know, for Claims 6, for example, was a different reason to make the modification? There were other reasons put forth in that second ground that's not part of the briefing or the issue here today, Your Honor, yes. Okay, so it's your position that if we look at the claims 6 and 7 and 9 through 13, we're going to see that they would rise and fall also with the other claims at issue today? Based on the way that the final written decision treated those claims, yes, Your Honor. Okay. And so this KSR lens that we're supposed to use, that the Board is supposed to use to analyze the prior art and figure out whether or not the 718 claims are obvious, is a lens of common sense, which KSR references 10 times in its decision. Predictability, which KSR references 3 times in its decision. Market forces making decisions or driving decisions, which KSR references 5 times in its decision. And so if the expressed teachings of Phillips through the proper KSR lens are not sufficient to have a single reference obviousness combination render obvious those claims with 98% identicality between the matrices, then what is sufficient for a single reference obviousness to render? Counsel, can I ask you a specific question? I'm looking at the rationale of the Board at pages A26 to 27, and there the Board says that they're not convinced that a person born in Mary's County Art would have been motivated to swap the two digits in order to protect the most significant bit. And they say the reason why is they credit the expert testimony of Dr. Smith as testifying that adding protection to just the most significant bit would then remove protection from the other bits. So my question is why isn't that a factual finding that we would have to review for substantial evidence? That, Your Honor, would be a factual finding, yes. Thank you. That comment is directed to the notion of taking Phillips and they seem to be disregarding the effect of Phillips itself and suggesting that by changing those last four positions to just with the modification to just protect the most significant bit isn't necessarily going to have an overall desirable outcome. It seems to be what they're saying, right? That's correct, Your Honor. And that's exactly why that factual finding should be overturned even under the heightened substantial evidence burden. Well, just getting to the nature of the fact finding, the fact finding is if you use one of your four additional rows to the matrix to focus on protecting one particular bit over another bit through a modification of what Phillips 46 has, then you necessarily are kind of robbing from Paul to give to Peter, so to speak. You're helping out one bit by making the switch at a cost and a trade-off to another bit. Is that fair to say? It is, but that doesn't end the story because then the question is maybe there's still a motivation to do that. And then the question is why would that motivation exist? And I think the point is that because there's one bit of all, it doesn't quite rule them all, but it's the most significant bit. It's the main event of all the bits. And so maybe, just maybe it would be obvious to use all of your extended rows to help and protect that bit because that's the bit that's going to cause potentially the largest error in the channel quality value. And that's exactly right. The difference between 10,000 and 9,000 is quite significant. The difference between 9,999 and 9,998 is quite insignificant. So here the board said, well, they don't think there's still a reason to be motivated to modify Phillips 46 in this matter because at the time, among all these members of this standard seven group, there was just a ball of confusion going on. There was a lot of unrest and melodrama over which proposal was going to be adopted and incorporated into the standard for transmitting channel quality on an uplink transmission. And so they're trying to figure out which of the proposals is the best proposal, is the most optimal proposal in order to select. And I'd just like to hear your comment on whether that's the right way or the wrong way to think about Section 103 obviousness. Not in the slightest, Your Honor. The test is not what is the best. The test is what would have been obvious, and that was the holding in this Court's Parr Pharmaceuticals versus TWI Pharmaceuticals, 773F3, 1186, where it said, our precedent, however, does not require that the motivation be the best option, only that it be a suitable option from which the prior did not teach away. Are you aware of any case from our Court or another Court that has considered the 103 inquiry through the lens and in the context of what skilled pharmacists were actually doing at the time of the invention and looking at a situation like this where there's members of a standard-setting body that are trying to select a standard that they'll all follow and adopt, and so will the rest of the industry? And so it's appropriate in that particular kind of context to think about 103 through the eyes of those skilled pharmacists who are in real time trying to make these difficult choices. Respectfully, Your Honor, I'm not at this moment. I can see what I can find and correspond with that. Maybe the other side will find something. With that, I'll reserve the rest of my time. Okay. Thank you, Mr. Nelson. Mr. Puckett. Good morning, Your Honors, and may it please the Court. All of the issues in this appeal are easily ---- I'm a little concerned in reading the record here that it appears to me that you may have misled the commission into the error that's argued to have taken place here. And if you look at page 535 of the appendix, if you have that in front of you, there's a statement at the top of the page which I think is not accurate, and I'd like you to comment on that. So Your Honor is pointing me to page 535. 535, yeah. And it says, put another way, Pazita at the time of the invention would not have known whether switching two digits in the basis sequence tables would have a beneficial effect on MSB. And I think that's not correct. I look at your expert supplemental declaration, which is not actually in the appendix, and I don't see him saying that. It seems to me that it is undisputed, really, that switching the digits would have an effect, a positive effect on the protection of the most significant bit, which is a different question whether it would have an overall positive effect on the throughput. But is it ---- am I not correct that that statement is not supported by your expert's testimony? That is not correct, Your Honor. And so the board found, based upon ---- Well, this is a little difficult because you don't perhaps have in front of you the expert's declaration, but I don't see that in the expert declaration, support for that statement. I see support for the idea that it was unknown whether it would have an overall positive effect on the throughput, but I don't see your expert saying for one moment that it wouldn't have a beneficial effect on the protection of the most significant bit. So the board found, relying expressly on Dr. Smith's testimony, that a person of ordinary skill at the time ---- No, but I don't think you're answering my question. I'm trying, Your Honor. I don't see in Dr. Smith's testimony support for that statement that you made to the commission. The statement for that in Dr. Smith's declaration is his testimony that a person of ordinary skill would not have viewed those bits as results-affected variables. Are you looking at a particular page in the appendix? And if so, what is the page? Yes. I don't think that aspect of his testimony is in the appendix. So Dr. Smith testifies explicitly in his code, and I'm going to find the citation, that these, that a person of ordinary skill would not have viewed these as results- Wait, wait, wait. Paragraph 16 of his supplemental declaration. I'm sorry, you're asking, you're looking at paragraph 16, Your Honor? Mm-hmm. Okay. And so he said, in the paragraph that you're looking at, he's saying that the person of ordinary skill would not know that just flipping the bit would provide more protection to the most significant bit and more significant. No, he doesn't say that. You just said something that I don't see in his testimony. He did not, I think, say that switching would not provide more protection for the most significant bit. He says switching would not affect, have a, it was not known to have a beneficial effect on the throughput, on the overall outcome. But I do not see him as saying that switching the positions would not provide more protection to the most significant bit, which seems obvious on its face that it would. Well, so what it does is, at most, and the board makes alternate findings saying even if the person of skill would have understood that, would not have done it in practice, would not have viewed it as a good thing to do. Because if you look at the Phillips 46 reference closely, every time it talks about the most significant bit, it talks about it in plural, protecting the most significant bits. And if you reduce the protection to only one bit, even if it's the most significant in terms of value, you've now reduced it to a binary number. It's either going to be 16 or zero every time. So now the quality of your channel coding information is less robust. I don't understand what you're saying. So even in the Phillips proposal... Do you deny that switching the positions would provide more protection to the most significant bit? I deny that there's evidence in the record to support that a person of skill would have understood that at the time, and the board made an express finding... The testimony of their witness said it explicitly. The testimony of your witness doesn't refute that. And so the testimony of their witness was rejected by the board in totality. The board's decision rests 100% on its rejection of Dr. Clark's testimony, and that is the basis for the court finding that the petitioner did not meet its burden of proof in the IPR proceeding below. It's almost obvious on its face that when you zero out all the other bits in the row and put a one associated with the most significant bit, then what you're doing is protecting the most significant bit. We're trying to convert a five-bit input sequence into a 20-bit output sequence, and now we're adding four bits at the end of what was previously a 16-bit sequence. And when you go 0, 0, 0, 0, 1 for the final four rows, every single time what those final bits in the 20-bit sequence are going to be associated with is the most significant bit each time, which is the one that's in the sequence. So it is trying to protect through redundancy the most significant bit over and over again. I don't understand why there's a concern or alleged confusion about that. So the question as framed is driven with hindsight bias. You're saying that obviously— No, there's a summation formula in Phyllis 46, which is also recited in her claims. It's the exact same summation. It's just algebra. When you carry out the formula and you plug in these rows of 0s and 1s, what you end up with when you do a row with 0, 0, 0, 0, 1 is that bit, 16, 17, 18, 19, they're all going to be the most significant bit. You're going to get that value. So there's two points. One is that I disagree the board's factual finding is that a person of ordinary skill would not have understood that because they're not as good as a legal expert. I would love to see where they said they did not know that when you add that kind of a row in Phyllis 46 of 0, 0, 0, 0, 1 to those extra rows to create a 20-row matrix, they have no idea what you're protecting when you're adding that. So it's on page— Of course, you're protecting the most significant bit. It's on page 33 of the final written decision. The board starts at the bottom of 32 and then going all the way through 33. The board goes one by one and rejects every bit of substantive testimony from Dr. Clark on these issues, every bit. And it's important to emphasize— Which sentence are you relying on in particular about the most significant bit? In particular, the board finds that at the middle of the page where it says that we also find insufficient evidence that one of ordinary skill would have understood at the relevant time that the bits of the table were result-effective variables that could be modified with readily predictable results on overall system performance. And so— I'm sorry. Are you on A32 or A33? I'm on A33, right in the middle of the page. That sentence doesn't—it's not talking about the tradeoff of protecting the most significant bit and recognizing that it's the most significant bit that, you know, Phillips says that you want to protect the most significant bit. I'm having a hard time understanding how this sentence that you've identified addresses that as opposed to addressing the overall result.  It's explicit. It says, would decrease the aggregate magnitude of transmission errors. It is not focusing on adding protection for the most significant bit. In other words, they've ignored the motivation that the petitioner is arguing provides for doing the switch. So at the very bottom of A32 and going to the top of A33, the board expressly finds as a finding of fact that even if one were to start with the Phillips proposal, there's insufficient evidence that one of ordinary skill in the art at the time would have been motivated to modify or to swap the last two bits of the last row. And going beyond that is where the board then finds that the person of ordinary skill was at such a low level of the understanding of overall system mathematics at this point— addressing or addressing the motivation that the petitioner is offering. That is, that by switching the bits, you provide more protection to the most significant bit. Their whole discussion appears to focus on the overall throughput benefits and saying that the overall throughput benefits from switching have not been established. We can accept that, but there's an alternative motivation here that is simple, and it says that switching would provide more protection for the most significant bit. And I don't see that there's anything in the record that supports the notion that that was difficult to understand. And as Judge Chen has pointed out, it seems to be sort of obvious on its face that it would provide more protection for the most significant bit. So I keep hearing that it's obvious on its face or that it would have been common sense, but this is all in hindsight. On pages 27 and 28, the board expressly finds that the person of ordinary skill, that they would not have understood the mathematics behind either the channel coding for the... It's devoted to the overall question of the throughput, effect on the throughput, not on the simple question of whether it would have provided more protection for the most significant bit. But even with respect to that motivation, the board is making express findings here that a person of skill would not have been motivated. So at the bottom of 32, going to 33, the board says that even starting with Phillips, the person with ordinary skill would not have been motivated to swap the last two bits. And it notes there that Phillips itself did not propose doing so. It's referring to the lack of evidence to support the notion that it would have an overall effect on the throughput. There's another sentence at the top of 833 that troubles me, where it says, quote, despite Phillips' recognition that it is beneficial to, quote, give significant extra protection to the MSB, most significant bit, end quote, Phillips did not propose doing so by swapping the last two bits of the last row, and there's no evidence that any of the other three GPD members did so before LGD's proposal. In other words, the board seems to be hunting for an anticipatory reference and saying, oh, nobody's ever done this before, and so therefore, because it's novel, it's likewise not obvious. That seems to be the reasoning that the board is offering right here. If I may respond. So the board is not requiring a teaching suggestion or motivation or an anticipatory reference that's expressed in the writing. What the board is doing is holding the petitioners to their burden of proof, and the board has rejected Dr. Clark's testimony on all of the points that the court is raising now. But the petition identified what Phillips 40-6 says, which is the bit on the end of the row is the most significant bit, and that large errors can occur if the most significant bit is wrong, and so we're going to try to provide lots of robust protection and then a little bit of protection to the second most important bit. And the technical testimony doesn't explain why Phillips itself did not arrive at a solution that would have more significantly protected the most significant bit. And it doesn't meet you for purposes of 103. That would be a 102 reference. For 103, it is their burden to show that a person of skill would have been motivated to alter the reference to actually make the invention, and that is what they have failed to prove with evidence. They want to fall back on, well, it's common sense. It would have been obvious in hindsight. No, no, no, no, no. They have testimony that that would be the effect, that it would provide more protection for the most significant bit, and I do not see your witness as refuting that. The board rejected the credibility of Dr. Clark's testimony. Where did they reject this particular testimony as not being credible? On pages 32 through 33, where they say that the person of ordinary skill would not have been motivated to make the modification and the person of ordinary skill would not have understood these to be results-affected variables and would not have understood that making this modification would have resulted in effective system throughput. There is no evidence in this record regarding the state of the art regarding system-level simulations. They weren't available to the person of ordinary skill in 2002. I don't see the blanket rejection of Dr. Clark's testimony that you're referring to.  So this is what is important for the court to realize, is that on a point of appendix 367 to 368, this is where the board in its institution decision expressly relies on paragraphs 98 through 99 and 107 through 115 of Dr. Clark's testimony, and then when you go to pages 32 through 33 of its final written decision, the board point by point by point says there's no evidence for each of those things that Dr. Clark previously said. It is a total rejection of the credibility of their expert witness, and without that evidence, they cannot meet their burden of proof. That's what the move comes here. Counsel, can I ask you two questions, first of all?  Do you think that the board's credibility findings regarding witnesses are what we would call virtually unreviewable per Supreme Court case law? And the reason I think you should think about that is because the Supreme Court has said that those types of credibility, witness credibility determinations by a lower court are virtually unreviewable because the court can see the demeanor of the witness, see if they're sweating, see how they're squirming, see those physical characteristics that help them make that determination. In a proceeding like this, there is no, it's all cold paper record, and the Supreme Court has said the appellate court cannot second guess a lower court's credibility determination because it can only look at a cold paper record. But here, both tribunals, both us and the PTAB, are looking at a cold paper record. So what do you think we review credibility determinations for? I think it might be substantial evidence. What's your view? So I don't disagree that when the board is going to reject the credibility of an expert, it must provide a final written decision that meets administrative standards, but here the board provides 10 pages of reasons that it rejects Dr. Clark's testimony. Where does it reject Dr. Clark's testimony on this particular point? That is, that switching the bits would provide more protection for the most significant bit. Where do they reject that testimony? On pages 33. Where? They expressly say that the person of ordinary skill would not have understood these to be result-effective variables. That means that the board is making a factual finding that it's not within the knowledge of the person of ordinary skill that flipping the bits is going to cause that result. The only factual finding that needs to be sustained here is the board's rejection of Dr. Clark's testimony. If we read that as referring to the overall result, that is, the throughput result, then there's no finding about the effect on the protection of the most significant bit, right? I disagree with that. I know you do, but if we read the board as directing itself to the inventor's motivation, that is, the protection of the overall throughput, as opposed to the protection for the most significant bit, then your conclusion about what follows from the board's decision doesn't follow, right? I disagree because the only evidence of the record of that comes from Dr. Clark, and the board rejected his testimony. It found him not credible. If that is affirmed, then the board's decision must be affirmed. Counsel, I want to ask you a couple more questions about Phillips. So Phillips does say that it's good to protect the most significant bit. What does it say about the second most significant bit, if anything? So every time that Phillips uses that phrase, it uses it in the plural. It says it's important to protect the most significant bits, which is why it's important that the board found that Phillips didn't actually make the modification to arrive at the invention. And so a person that is motivated to protect the most significant bits, plural, which is what Phillips says over and over and over again, would do what Phillips did, but there is no proof in the record that a person of ordinary skill would have modified Phillips to arrive at the invention. That's where they fail to meet their burden of proof. So I'm thinking about this testimony that's referenced by the board on page 827, where they reference Dr. Smith's testimony that adding protection to just the most significant bit removes protection for the second most significant bit, consistent with Phillips' desire to protect the most significant bits. Correct. Is that a fact-finding that's reviewed for substantial evidence? Absolutely. It's clear from the patent itself, it's clear from the evidence, and it's clear from the board's findings that there was a tradeoff understood at the time between protecting the most significant bit versus looking at the overall bit error rate, and that LG comes in to break the tie, if you will, from a standpoint of system performance using system-level simulators that other people didn't have at the time, and that's how LG was able to arrive at the patented solution. It sort of sounds to me like you think Phillips 46 somehow teaches away from maximizing protection for the most significant bit. I think that's a fair reading of it, because it's saying even if you're interested in unequal error protection... Well, I know that's your position, but what I'm trying to ask myself is who said that? I mean, Phillips doesn't, on its face, say that. It talks about the importance of trying to avoid large errors and the channel quality value, and we all know that the most significant bit is the most damaging in terms of creating error in that value. But I don't see anything that says... But this is not a 102 case. We're trying to figure out, all right, a skilled artisan at the relevant time period, they had Phillips 46 in front of them. What if any obvious variant of Phillips 46 would there be? We know that there's this principle of protecting the most significant bit. Why wouldn't they go ahead and just maximize it and do the tradeoff? Because the error for the most significant bit is so much more damaging than any other bit, including the second most important bit. So the first thing the board says on that is that the person of skill would not have had a single reference, the Phillips reference, but instead would have had five proposals that were coming in from five different groups to the 3GPP. So the person of ordinary skill would not have started only with the Phillips reference, and Dr. Clark failed to include those other references in the record, which is an independent basis for rejecting his credibility. My next question, which is it felt to me like there was an error, and I was exploring this with your opposing counsel, where the board was looking at the 103 inquiry through the lens of what would be the best thing to do among all these competing proposals. That would be what is obvious. And everything else that's a competing proposal, it wouldn't be obvious to select those or try to do obvious variants of those. And I just don't know of any case that's ever looked at 103 in that way. Instead, what we do is look at the prior art and try to imagine, in view of the references, what would be, as a technical matter, an obvious thing to do that wouldn't merit patent protection. So do you know of a case where it's no longer just an abstract technical inquiry, but instead it's, oh, this is a standard-setting organization, so we've got to try to figure out what is the optimal, the best, the most preferred of the approaches, and that's the only thing that can be considered an obvious thing to do. Sure. So on pages 28 through 30, I believe it is, of the red brief, particularly in the long footnote 2 that spans those pages, we collect the cases in which the Federal Circuit has held over and over again that there must be evidence, there always must be evidence in support of this motivation to combine. And so you can't just look at the slightness of the modification. That's a simple, basic thing. And that's why the board felt we were listening to what my question was, which was premised on whether there is a case out there that in the context of a 103 inquiry, we have said there are going to be circumstances where you look at what the actual skilled artisans were doing at the time of the invention, and that you confine the 103 inquiry to what those players were doing at the time and what they actually were focused on in terms of selecting what is the best thing to do, as opposed to merely selecting or identifying what would be obvious choices to do. Sure. So the grain factors obviously compel consideration, objective evidence. There isn't a case that is written that looks at the 103 through that particular lens. I'm not aware of one. I didn't see you cite one. I just want to confirm. If you're looking for something specifically within a standards-heading context, I cannot cite it off my head here. Right. But the other problem with the board's decision I had was the fact that it seemed to be focused on trying to figure out what is the most optimal best proposal to go, and then dismissing everything else. And the concern for me is that that's not the obviousness of this inquiry. It's not about trying to figure out what's the best thing. It's just trying to figure out what are obvious variants to do that would be suitable. And if I'm wrong about that, please let me know. So I'm way over time. If I may have about 30 seconds to summarize. That's great. So the board's decision here was a decision to do nothing. They did not cancel the patent because they found that the petitioners below had not met their burden of proof, and that is because they rejected the credibility wholesale of Dr. Clark's testimony. Their complaint about the board applying KSR improperly is simply a complaint that they are being held to their evidentiary burden of proof. So the only finding that needs to be affirmed here is the board's rejection of Dr. Clark's testimony on pages 32 and 33, which supports the board's finding that they have not met their burden of proof. I have questions for you, so please don't sit down yet. So my question for you is, do you know of anything in the record that shows that if one were to modify, or with Phillips' desire to protect the most significant bits, plural, how do we know that swapping just the 0 and 1 in that last line of the table, that there wouldn't be a desire to make other changes in other parts of the table to make protection of the second most significant bit more robust? So that's the kind of evidence that a petitioner should put into an IPR in order to demonstrate with evidence that a person of skill would have a motivation. That would have been evidence to support your position, right? Because it would show that you wouldn't just make the change they're suggesting. You'd have to think about whether other additional changes would be made as a result of that. I'm asking you if there's any evidence to that effect in the record. So, yes. And so the board looks at sort of the entirety of the 3GPP papers, particularly regarding the papers from Samsung and Erickson and others that are engineering in favor of most, I'm sorry, in favor of bit error protection. And importantly, the court looks at the 2016 paper regarding the mathematics, the overall system level mathematics, that shows that this protection of CQI information is just a very small thing in an overall system scheme. And from a system architecture level, the idea that you're going to put all of these system resources into protecting the CQI information might be a little bit ridiculous because that's all overhead. And so what you're looking for here is the appropriate system balance, which involves a multitude of engineering factors that are much different at the system level than they are just checking the error quality on particular bits of information. So you're saying that the motivation is to perform improvement of the overall system level. Well, let's assume for a moment that the record establishes that Phillips said that improving the protection for the most significant bit is desirable. And let's assume that the record establishes that switching the two positions would improve the protection for the most significant bit. I know you disagree with that, but let's assume that the record establishes that. Do you lose under those circumstances? No, because the board's factual finding was that even starting with the Phillips proposal, a person of ordinary skill of art, there's no evidence that would have been motivated to make that modification. No, no, you're not accepting my hypothetical. My hypothetical is we're rejecting that position. We find that there is undisputed evidence in the record that switching the two positions would improve protection for the most significant bit. If we conclude that, do you lose? No, the board found that even if you find that, the person of skill would not have been motivated to do so, even with the knowledge that's expressed by the fact. Your expert said, and the board bought off on this, that the math was mysterious in terms of what the impacts would be, and it wasn't discovered until many years after the fact. What math are we talking about? Are we talking about system throughput math, or are we talking about some other kind of math? Mathematics that would enable system throughput modeling, yes. And the 2016 paper shows that there are deep similarities between what's being used on the forward error correction just for the CQI information versus things that are being done at much deeper system level, and that paper just sort of emphasizes to the board the complexity of system-level modeling, and that just was not available in 2002. Are you relying on the statement in the Phillips proposal itself that says that the arrangement it proposes gives significant extra protection to the most significant bit and a little more robustness to the next most significant bit? How does that weigh into your argument that there is no motivation to modify Phillips to make the second most significant bit less protected? So that's the first point the board makes on page 33. It says that Phillips did not itself make this modification, and so if you assume Phillips motivations as stated in the technical paper, they didn't go down that path, and so that's the first point that the board makes. Okay. I think, Mr. Puckett, we're out of time. Thank you. Thank you. Mr. Halverson, you've got a little over two minutes here. Thank you, Mr. Court. Very briefly, on rebuttal, Your Honors, I have, I believe, four things. Judge Dyke, as you rightly noted, the board's final written decision effectively ignores the petition's motivation combined, which is not about throughplay. The focus is solely on the protection of the most significant bit, and the reason why, as Judge Chen noted, the claim is just algebra. This is basic math that's taught in freshman-level college courses, certain high school courses. The relationship between these numbers, what goes in, how the numbers are manipulated. It's in Phillips 46 itself. Exactly right. There is nothing that is unpredictable, and that is the hallmark of KSR obviousness, and it is not the analysis that the board did in this case. And for that, we respectfully submit that the case should be reversed or remanded. Okay. Thank you. Thank both counsel. The case is submitted.